**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**AT CINCINNATI**

| | | |
|---|---|---|
| ROOFING FOR TROOPS LLC AND EUGENE JOSEPH HASKAMP, | § | |
| | § | |
| Plaintiffs, | § | Case No 1:26-cv-00320-DRC |
| | § | |
| vs. | § | |
| | § | |
| REGIONAL ADJUSTMENT BUREAU, INCORPORATED (D/B/A RBA, INC.), ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS RAB, INC., RENEE BARKER, AND TY ROBINSON'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Come now, Defendants RAB, Inc. ("RAB"), Renee Barker ("Barker"), and Ty Robinson ("Robinson") (collectively, the "RAB Defendants") and files this Brief in Support of Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as follows:

## TABLE OF CONTENTS

SUCCINT SUMMARY OF THE ARGUMENT ....................3

INTRODUCTION ....................3

ARGUMENTS AND AUTHORITIES ....................5

A. Standard of Law ....................5

B. The Lanham Act is Inapplicable in this Case ....................6

C. The Ohio Deceptive Trade Practices Act claim is likewise futile ....................11

D. The FDCPA Does Not Apply to Commercial Debts ....................15

E. There Is No Valid Claim for RICO Conspiracy ....................17

F. Ohio's Deceptive Trade Practices Act Claim Is Likewise Inapplicable ....................20

G. There Is No Valid Claim for Defamation ....................16

H. Plaintiff's Second ODTPA Claim Fails as a Matter of Law ....................19

I. Plaintiff Has Not Identified Any Contracts That Were Tortiously Interfered With ....................23

J. There Is No Valid Fraud Claim Alleged ....................21

K. Haskamp Does Not Plead a Valid Claim for Intentional Infliction of Emotional Distress 27

L. Declaratory and Injunctive Relief Is Not Warranted in this Case ....................30

CONCLUSION ....................31

## SUCCINCT SUMMARY OF THE ARGUMENT

1. Plaintiffs attempt to transform an ordinary commercial debt dispute into a sprawling federal lawsuit asserting claims under the FDCPA, the Lanham Act, RICO, the Ohio Deceptive Trade Practices Act, and various common-law tort theories. However, the Complaint fails to state any claim upon which relief can be granted and therefore should be dismissed.

2. The FDCPA claim fails because the debts at issue are commercial debts rather than consumer debts. The Lanham Act and Ohio Deceptive Trade Practices Act ("ODTPA") claims fail because Plaintiffs do not allege trademark infringement, consumer confusion, false advertising, or any other conduct governed by those statutes. The RICO conspiracy claim fails because Plaintiffs do not allege a substantive RICO violation or the elements of a substantive RICO violation, such as a RICO enterprise or qualifying predicate acts.

3. Plaintiffs' remaining tort claims for tortious interference, defamation, fraud, and intentional infliction of emotional distress are unsupported by sufficient factual allegations and fail to plead the required elements of those causes of action. Finally, Plaintiffs' requests for declaratory and injunctive relief are duplicative of their substantive claims and are unsupported by allegations of any ongoing irreparable harm. Accordingly, the Complaint should be dismissed with prejudice.

## INTRODUCTION

4. Plaintiffs Roofing for Troops, LLC ("RFT"), and Eugene Joseph Haskamp ("Haskamp") (collectively, the "Plaintiffs") filed suit against RAB Defendants and two of RAB employees, Barker and Robinson, as well as CA Repair And Roofing, LLC ("CA Repair") on April 16, 2026.[1]

---

[1] Plaintiffs also sued a company called "Regional Adjustment Bureau Incorporated (d/b/a RBA, Inc.) [sic]", which Plaintiffs claim is "company registered to do business in the State of Tennessee and registered as a foreign company doing business in the State of Ohio, but also appears to be headquartered in Texas, similar to Defendant RAB Defendants, Inc." Doc. 1 ¶ 9; Doc. 20 ¶ . Regional Adjustment Bureau Incorporated was an entirely separate entity from RAB Defendants. Regional Adjustment Bureau Incorporated was acquired by a different entity in 2018 and ceased operations at that time. *See Credit Control, LLC Completes Acquisition of RAB Inc.*, InsideArm, Aug. 27, 2018, available at https://www.insidearm.com/news/00044270-credit-control-llc-completes-acquisition/ (last visited June 3,

Doc. 20. These claims stem from alleged commercial collection activity performed by RAB Defendants on behalf of CA Repair, seeking to recover monies owed by RFT to CA Repair. Plaintiffs alleged the RAB Defendants engaged in "volatile debt and illicit collection practices, deceptive trade practices, the unauthorized practice of law, fraud, extortion, intentionally defamatory and disparaging statements, harassment and intimidation tactics, tortious interference of contracts and business relationships, intentional infliction of emotional injuries, and various other unlawful acts and communications furthered in intra- and interstate commerce." Doc. 20 ¶ 1. Plaintiffs allege numerous counts based on these factual allegations.

5. Even though the Court must take Plaintiffs' allegations as true as this stage of the proceedings, there are numerous defects in Plaintiffs' Complaint which warrant dismissal of some or all of the claims before the Court. For example, Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and uses these alleged violations to support other claims, such as Plaintiffs' conspiracy to commit RICO violations claim. Doc. 20 at 35-38. However, the FDCPA does not apply to commercial debt collections, as is the case here, which means any FDCPA claim fails as a matter of law. Likewise, much of Plaintiffs' claims under the Lanham Act and the Ohio Deceptive Trade Practices Act are entirely baseless, as this case has nothing to do with the use of any trademarks or any confusion or unfair practices resulting from the use of similar or infringing trademarks, there is no commercial advertising at issue in this case, and the various parties to this action are not competitors. On the face of the Complaint, these claims all fail as a matter of law.

---

2026) ("Credit Control, LLC (Credit Control) announces the acquisition of Regional Adjustment Bureau, Inc. (RAB)."). Plaintiffs' Amended Complaint added two other entities, entitled "Regional Adjustment Bureau of Texas, Inc. (Regional Adjustment Bureau Inc)" and "Regional Adjustment Bureau Incorporated (THE)." Doc. 20 ¶ 11-12. RAB has only one corporate form—RAB, Inc. RAB Defendants are unsure as to the identity of these other entities Plaintiffs bring suit against.

6. Plaintiffs' other claims fail as well. Plaintiffs have not pled that any specific contracts or business relationships were interfered with, and their vague and conclusory statements to that effect cannot be given any weight. The defamation claim and fraud claim are based on Plaintiffs reading facts and statements into communications which did not exist in those communications. The RICO conspiracy claim fails entirely as Plaintiffs do not allege a substantive RICO claim. The declaratory and injunctive relief is likewise invalid, as it seeks the same relief as the other claims and Plaintiffs have not shown any ongoing risk of immediate harm that would warrant injunctive relief. For the reasons stated herein, Plaintiffs' claims should be dismissed with prejudice for failing to state any valid claims.

## ARGUMENTS AND AUTHORITIES

### A. Standard of Law

7. A motion to dismiss for "failure to state a claim upon which relief can be granted" evaluates the plaintiff's cause of action as stated in a complaint. Fed. R. Civ. P. 12(b)(6); *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, the complaint must lay out enough facts for a court to plausibly infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts must accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

8. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. 544, 554, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In considering a motion to dismiss under Rule 12(b)(6), a court must keep in mind that "[t]he purpose of a motion under Rule 12(b)(6) is to evaluate the legal sufficiency of the complaint, not the probability of success on the merits." *Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 639 (E.D. Mich. 2005).

**B. Plaintiffs do not have a valid claim under any provisions of the Lanham Act.**

9. Plaintiffs brought a claim under the Lanham Act for "Anticompetitive And Unfair Conduct."[2] Doc. 20 at 33. Plaintiffs cite to 15 U.S.C. § 1125(a) as the statute allegedly violated without identifying a subcategory. Doc. 20 ¶ 167. The title of this section, "Anticompetitive and Unfair Conduct" suggests Plaintiffs are asserting claims for unfair competition; an unfair competition claim concerns whether there is a likelihood of confusion among consumers regarding the origin, sponsorship, or approval of goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(A).

10. The Lanham Act is designed to protect against "the use of trademarks which are likely to cause confusion, mistake, or deception of any kind." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 711 (3d Cir. 2004) (cleaned up). Plaintiffs claim Defendants violated the Lanham Act by engaging in "Anticompetitive And Unfair Conduct," which could plausibly be read to assert a claim for unfair competition. Doc. 20 at 33; *see* 15 U.S.C. § 1125(a). "To prevail upon a[n] unfair competition claim, [Plaintiffs] must establish that [Defendants' conduct] creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017). An unfair

[2] To the extent Plaintiffs only allege a false advertising claim under the Lanham Act, this analysis regarding the lack of a valid of a valid claim for unfair competition is equally applicable to Plaintiffs' claims under 4165.02(A)(2), address below. *See* Doc. 20 ¶ 221.

competition claim under § 1125(a), similar to a trademark infringement claim under § 1114, "asks whether there is a likelihood of confusion among consumers regarding the origin of the goods offered by the parties. In fact, the same likelihood of confusion test applies." *A/S v. Drip Drop Hydration Station LLC*, No. 1:24-cv-00640, 2025 U.S. Dist. LEXIS 258268, at *12 (S.D. Ohio Oct. 15, 2025) (quoting *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014) (citing *Audi AG & Volkswagen of America, Inc. v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act, 15 U.S.C. § 1051 et seq., we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.")). "To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

11. To determine whether Defendants engage in unfair competition, the Court must consider (1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant[s] in selecting the mark, and (8) the likelihood of expansion of the product lines. *Alticor, Inc. v. Akaski Value Making, LLC*, No. 1:24-cv-526, 2025 U.S. Dist. LEXIS 127948, at *7 (W.D. Mich. July 7, 2025).

12. Plaintiffs' Complaint is entirely devoid of any allegations that could support a claim for "Anticompetitive and Unfair Conduct" under the Lanham act. There are no allegations regarding any trademarks at all; the word does not appear in the Complaint at all. Doc 20. Likewise, there are no allegations regarding any use of similar or identical trademarks by RAB Defendants; no

allegations regarding the relatedness of the goods or services, as RAB Defendants does not even offer the same goods or services as Plaintiffs; no evidence of any actual confusion whereby people confused Plaintiffs with RAB Defendants or anyone else; no allegations that RAB Defendants intentionally used a similar or confusing trademark, as there are no allegations regarding any trademark, and no allegations regarding the expansion of product lines. *Id*.

13. While Plaintiffs make allegations regarding RAB Defendants' statements allegedly made to customers of Plaintiffs and claims these statements were "intended to deceive, defame, and disparage" Plaintiffs and/or other "customers and/or third parties," these allegations do not support a claim for unfair competition under the Lanham Act. Plaintiffs have failed to allege any facts which could support such a claim under the provision of the Lanham Act cited by Plaintiffs.

14. If Plaintiffs intend to bring a claim for false advertising under the Lanham Act, and has mislabeled this section, the claim likewise fails as a matter of law. Doc. 20 at 33. The Lanham Act establishes liability for the use of "any word, term, . . . false or misleading description of fact, or false or misleading misrepresentation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities[] . . . of [its] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B) (emphasis added). To bring a false advertising claim under the Lanham Act or the analogous Ohio Deceptive Trade Practices Act, a party must prove: (1) the adverse party "made a false or misleading statement of fact about [a] product or service"; (2) that statement "actually deceived or tended to deceive a substantial portion of the . . . intended audience"; (3) that statement "likely influenced the intended audience's purchasing decisions"; (4) the adverse party "introduced the statement in interstate commerce"; and (5) "a causal connection" exists between the statement and the injury. *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452-53 (6th Cir. 2024).

15. The Sixth Circuit defines "commercial advertising or promotion" as:

> (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base.

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015). The Sixth Circuit also held "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id.* at 800.

16. Plaintiffs have not identified any false or misleading statements about products or services offered by Plaintiffs and have not plead sufficient facts to show the statements likely influenced audience's purchasing decisions and therefore this claim fails. First, there are no commercial advertisements at issue here. Plaintiffs allege that RAB Defendants "have made and/or advertised and continue to make and/or advertise or publish illicit statements." Doc. 20 ¶ 34. Plaintiffs offer no allegations how any of RAB Defendants' statement are commercial advertisements as defined by the Sixth Circuit. Further, the complaint leaves it vague as to whether RAB Defendants simply "made illicit statements" or whether they "advertised illicit statements."

17. There are no commercial advertisements in this matter, as the case only concerns statements allegedly made by the RAB Defendants to specific persons or companies; specifically, persons or companies that owed outstanding debts to CA Repairs, who RAB Defendants acted on behalf of. RAB Defendants did not advertise its services to any of these individuals, as none of these individuals were RAB's customers or intended customer basis. Likewise, RFT is not RAB's customer or customer base, and RFT is not a competitor with RAB, as they are engaged in entirely different commercial activities. RAB did not intend for any individuals to purchase RAB's good

or services, and there is no "organized campaign to penetrate the relevant market" in this matter. RAB Defendants and RFT are engaged in entirely separate industries with no overlap, and RAB's "customers" are not individuals who need new roofs, as are RFT's customers, but rather commercial entities with outstanding debts to be collected. Thus, Plaintiffs cannot point to any commercial advertising that could form the basis for a false advertising claim.

18. Second, Plaintiffs cannot identify any false or misleading statements made about any product or service offered by RFT in their Complaint. Plaintiffs do not dispute that they did not make payments to CA Repair; thus, RAB Defendants' statements as such are true. Plaintiffs' un-litigated claim alleging a breach of contract with a different party does not make RAB Defendants' statements false. Further, the majority of the alleged false or misleading statements RAB Defendants made concern actions that RAB Defendants allegedly could not take, such as Plaintiffs' contention that they made false statements concerning their ability to file liens or take other actions. These are not false or misleading statements about RFT's services nor would they influence the intended audience's purchasing decisions regarding roofing services from RFT or commercial debt collection services from RAB; Plaintiffs also allege the RAB Defendants engaged in "false advertising" by taking actions "in patent violation of the strict requirements of the FDCPA"—said statute does not apply in this case and cannot constitute the basis for a false advertising claim. Doc. 20 ¶ 161.

19. Plaintiffs' claims that RAB Defendants made misrepresentations concerning their ability to file liens or take other actions are not misrepresentations concerning RFT's goods or services, would not influence purchasing decisions, and cannot serve as the basis for a false advertising claim. Further, as most of the alleged conversations before the Court are between RFT and RAB Defendants, there is nothing to support these claims were widely disseminated, and no allegations

it was disseminated to anyone other than people directly at issue in this matter, either RFT or the individuals from whom work was done for. There are no allegations these individuals constitute a "substantial portion" of RFT's customer base. Thus, there is no commercial advertising at issue in this case, and no false advertising claim under the Lanham Act.

20. In Plaintiffs' Amended Complaint, Plaintiffs cite to *Microstar Logistics LLC v. Cavalier Distrib. Co*., S.D. Ohio No. 1:24-cv-647, 2025 U.S. Dist. LEXIS 46968, at *9, in support of Plaintiffs' claims. Instead of supporting Plaintiff's claims, this case shows that dismissal is warranted. That case starts its analysis of the Lanham Act by noting "Section 43(a) [15 U.S.C. § 1125(a)] of the Lanham Act primarily concerns trademark protection." *Id.* at 6. It goes on to state "the Act also 'creates a cause of action for unfair competition through misleading advertising or labeling.'" *Id*. (*citing Pom Wonderful, LLC v. Coca-Cola Co.*, 573 U.S. 102, 104, 134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014)). However, key to this claim is that this "cause of action is for competitors." *Id.* Plaintiffs and RAB Defendants are not competitors. RAB Defendants were not trying to lure aware Plaintiffs' clients nor seeking to enter into the same market as Plaintiffs. As shown above, there is no commercial advertising at issue in this case, thus there cannot be any claims related to false advertising. For these reasons, any claim under the Lanham Act must be dismissed.

**C. The Ohio Deceptive Trade Practices Act claim is likewise futile.**

21. "The Ohio Deceptive Trade Practices Act is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising." *Dawson v. Blockbuster, Inc*., 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240 (Ct. App.), ¶ 23 (citing *Yocono's Restaurant, Inc. v. Yocono*, 100 Ohio App.3d 11, 17, 651 N.E.2d 1347 (1994)). Thus, courts "evaluate an Ohio deceptive trade practices claim under the same analysis as that used for Lanham

Act claims." *The Hillman Grp., Inc. v. Minute Key Inc.*, 317 F. Supp. 3d 961, 968 (S.D. Ohio 2018) (quoting *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 F. App'x 53, 55 (6th Cir. 2012) (citing *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).

22. In interpreting the ODTPA, Ohio courts apply "the same analysis applicable to claims commenced under analogous federal law." *Patel v. Dish Network L.L.C.*, 2015 U.S. Dist. LEXIS 106242, 2015 WL 4776894, at *4 (S.D. Ohio Aug. 12, 2015) (quoting *Chandler & Assoc. v. Am. Healthcare Alliance*, 125 Ohio App. 3d 572, 580, 709 N.E.2d 190 (Ohio Ct. App. 1997)). The analogous federal law is the Lanham Act. *Id*. It follows that Plaintiffs' claim under section 4165.02(A)(10), for Disparagement, are analyzed using the same five-part standard as False Advertising under the Lanham Act. *See Collins Inkjet Corp. v. Eastman Kodak Co*., 2014 U.S. Dist. LEXIS 188283, 2014 WL 11516553, at *13 (S.D. Ohio Mar. 21, 2014). Similarly, Plaintiffs' claims under section 4165.02(A)(2), for Causing a Likelihood of Confusion Regarding the Affiliation of Goods, are analyzed using the same standard for Trademark Infringement and Unfair Competition under the Lanham Act. *See Max Rack, Inc. v. Core Health & Fitness, LLC,* No. 2:16-cv-01015, 2019 U.S. Dist. LEXIS 158008, at *21 (S.D. Ohio Sep. 17, 2019)

23. As shown previously, Plaintiffs do not have a valid claim for unfair competition under the Lanham Act, and has no claims related to any trademark use or infringement. Thus, any claims under section 4165.02(A)(2), for allegedly causing a likelihood of confusion regarding the affiliation of goods, fail as a matter of law and should be dismissed. Doc. 20 ¶ 221.

24. Further, there are no allegations that RAB Defendants made any false statements about RFT's products or services. *Id*. ¶ 207. Section 4165.02(A)(10) applies when a party "disparages the goods, services, or business of another by false representation of fact." R.C. § 4165.02(A)(10). There are no allegations RAB Defendants disparaged the goods, services, or business of RFT; it

simply stated that RFT had not paid amounts owed under a contract with another party. This is not disparagement, but rather an accurate representation of fact, as RFT fully admits it did not pay CA Repair for the work performed. RFT's alleged reasons for not paying the debts do not change the fact that RFT did not pay the debts. RAB Defendants only stated that the debts had not been paid and there could be consequences as a result. Even if RAB Defendants could not take certain actions as alleged by Plaintiffs or if such threatened "consequences" could not be realized, these are not false statements concerning RFT's goods or services and therefore cannot constitute a false advertising claim.

25. There are no allegations that RAB Defendants made any statements concerning the quality of services provided by RFT or made false representations concerning the goods or services of RFT. Doc. 20. They simply sought to collect debts owed to CA Repair. Further, as most of the alleged conversations before the Court are between RFT and RAB Defendants, there is nothing to support these claims were widely disseminated, and no allegations it was disseminated to anyone other than people directly at issue in this matter, either RFT or the individuals from whom work was done for.

26. Likewise, Plaintiffs unfounded claims that the RAB Defendants engaged in the unauthorized practice of law cannot serve as a basis for "false advertising." First, the claims that allegedly constitute the unauthorized practice of law do not disparage the goods, services, or business of RFT. Further, nowhere in the Complaint do Plaintiffs ever allege the RAB Defendants identified themselves as licensed attorneys, and RAB Defendants could simply hire an attorney to handle these issues if they made it to that stage. Much of Plaintiffs' claim is premised on the debt being "unlawful" despite the fact that it is a civil contract matter that has not been litigated or decided by any tribunal, as evidence by the unresolved breach of contract brought by Plaintiffs in

this very action. Finally, Plaintiffs do not identify any actual business losses or any casual connection between the RAB Defendants' alleged actions and their alleged harm beyond their conclusory statements that such a harm and connection exist. For these reasons, Plaintiffs' claim under the ODTPA fails as a matter of law.

27. Additionally, Plaintiff Haskamp, as an individual, is barred from bringing claims under the ODTPA or the Lanham Act. Courts in Ohio have repeatedly held that "individual consumers are barred from bringing actions under the Lanham Act, 15 U.S.C. 1051, *et seq*., and under Ohio's Deceptive Trade Practices Act, R.C. 4165, et seq." *Michelson v. Volkswagen Aktiengesellschaft*, 2018-Ohio-1303, ¶ 16, 99 N.E.3d 475, 479 (Ct. App.); *Dawson v. Blockbuster, Inc*., 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240, ¶ 24-25. Further, any statements made by the RAB Defendants concerned RFT, not Haskamp individually.

28. Finally, Plaintiffs' claim under the ODTPA includes a statement that RAB Defendants acted "in patent violation of the strict requirements of the FDCPA and the Ohio Consumer Sales Practices Act, pursuant to O.R.C. § 1345.01, et seq." Doc. 20 ¶ 209. The FDCPA simply does not apply to the facts alleged as there are no consumer "debts" at issue, as addressed in the next section. Plaintiffs' offhanded claim regarding the Ohio Consumer Sales Practices Act should be given no weight. Plaintiffs could not establish a claim under this provision, as it requires an unfair or deceptive act be conducted "in connection with a consumer transaction." *Smith v. Smith & Nephew, Inc*., 5 F. Supp. 3d 930, 932 (S.D. Ohio 2014). The OCSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A). RAB Defendants were not involved in any consumer transactions with Plaintiffs, and therefore any claim

under this statute fails as a matter of law. For these reasons, Plaintiff claims under the ODTPA should be dismissed with prejudice.

**D. The FDCPA does not apply to commercial debts.**

29. The FDCPA only applies to certain debts, commonly referred to as consumer debts, which are incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a. "Based upon this language, courts have found that attempts to collect business debt are not covered by the Act, even where the collection efforts were directed at an individual." *Schram v. Federated Fin. Corp. of Am.*, No. 06-12700, 2007 U.S. Dist. LEXIS 31049, 2007 WL 1238863, at *1 (E.D. Mich. April 27, 2007) (citing *First Gibraltar Bank FSB v. Smith*, 62 F.3d 133, 135-36 (5th Cir.1995); *see also Slenk v. Transworld Sys.,* 236 F.3d 1072, 1074 (9th Cir. 2001)); *Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA."). "[C]ourts have found that attempts to collect business debt are not covered by the Act, even where the collection efforts were directed at an individual." *Schram v. Federated Financial Corporation of America*, No. 06-12700, 2007 U.S. Dist. LEXIS 31049, 2007 WL 1238863 at *1 (E.D. Mich. April 27, 2007).

30. Plaintiff's claim under the FDCPA arises out of RAB Defendants alleged attempts to collect debts owed by Plaintiff RFT, a roofing business, to codefendant CA Repair, a subcontractor of Plaintiff RFT. *See generally* Doc. 20. On their face, these are commercial debts owed due to a contractual relationship between two LLCs; it concerns commercial debts that arose when one LLC performed professional tasks for the other LLC in exchange for promised compensation. This is a commercial transaction between two commercial enterprises. RFT, as a commercial enterprise and a limited liability company, cannot incur debts for "personal, family, or household purposes". Further, Haskamp, who was only communicated with in his role as employee and agent of RFT,

likewise cannot be said to have incurred any of the debts at issue for "personal, family, or household purposes," as they were incurred in a business transaction and he was only contacted in his role as employee and agent of RFT. *See Schram*, 2007 WL 1238863, at *1.

31. Further, there are no allegations that RAB Defendants ever attempted to collect any debt personally owed by Plaintiff Haskamp. Plaintiff Haskamp is "the principal and account holder of his business." Doc. 20 ¶ 171. This allegation alone shows that it concerns a debt owed by a business to another business, which cannot be a consumer debt. There are no allegations that any debt owed by RFT was incurred "primarily for personal, family, or household purposes." *Id*. at 35-36. Further, there are no allegations RAB attempted to collect any debts from Haskamp individually, or any allegations that the debts were incurred by Haskamp personally and used primarily for personal, family, or household purposes. Therefore, any claim under the FDCPA fails as a matter of law, as the FDCPA does not apply to commercial collection efforts, and any claim under the FDCPA should be dismissed with prejudice. Further, any other claims premised on RAB Defendants' alleged failure to comply with the FDCPA should be dismissed, as there is no valid FDCPA claim here.

32. In Plaintiffs' Amended Complaint, Plaintiffs also bring a claim under Section 5(a) of the FTC Act, 15 U.S.C. § 45. Doc. 20 at 36. The Sixth Circuit has determined that "no private cause of action exists under the [FTC Act]." *Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001); *see also Wright v. Richardson*, 740 F. Supp. 3d 601, 616-17 (E.D. Mich. 2024) (determining that the private plaintiff "ha[d] no standing to bring [a] claim under 15 U.S.C. § 45"). "Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission itself." *Federal Trade Comm'n v. Owens-Corning Fiberglas Corp*., 853 F.2d 458, 464 (6th Cir. 1988) (citation omitted). "Because Plaintiff[s] [are] not the FTC, [they] cannot bring this claim." *Plastics NYC, LLC v.*

*Plastics Boutique, LLC*, No. 1:23-cv-02291, 2025 U.S. Dist. LEXIS 186092, at *50 (N.D. Ohio Sep. 22, 2025). Therefore, any claim under the FTC Act must be dismissed, as Plaintiffs do not have a private cause of action under the FTC Act, and any claim under the Act (including the FDCPA) must be dismissed, as this case concerns commercial debts.

**E. There is no valid claim for RICO conspiracy in this matter.**

33. Plaintiffs plead a claim for "conspiracy in violation of the RICO Act." Doc 20 at 37-42. This claim fails as a matter of law, as Plaintiffs cannot bring a RICO conspiracy claim without alleging and showing a substantive RICO claim, which is entirely absent in this matter. *Id.*

34. Section 1962(d) prohibits a person from conspiring to commit a RICO violation. 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate . . . subsection (a), (b), or (c)."); *Ramjet Aviation, Inc. v. My Parts Locator, Inc*., 2023 U.S. Dist. LEXIS 6178, 2023 WL 166009, at *3-4 (N.D. Ohio). To state a plausible claim for a violation of 18 U.S.C. § 1962(d), Plaintiffs "must successfully allege all the elements of a RICO violation [and] alleg[e] 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs*., 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). A plaintiff's RICO conspiracy claim fails if the plaintiff's substantive RICO allegations under subsection 1962(a), (b), or (c), are deficient. *See Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 450 (6th Cir. 2019) ("Because plaintiffs failed to plausibly allege a violation of § 1962(b) or (c), the district court properly dismissed the RICO conspiracy claim as well."); *Marinac v. Todd*, 2022 U.S. Dist. LEXIS 156554, 2022 WL 3904049, at *14 (N.D. Ohio) ("[B]ecause plaintiffs have failed to successfully allege all the elements of a substantive RICO violation, plaintiffs have necessarily failed to plausibly allege a RICO-conspiracy claim.").

35. Plaintiffs do not allege substantive RICO violations and do not identify the provision of the RICO Act that the substantive claims would be pled under. Plaintiffs do not establish the existence of an enterprise as required for a RICO claim and only makes conclusory claims that the RAB Defendants were "an illicit or unlawful enterprise posing as a debt collection firm." Doc. 20 ¶ 150. Further, these enterprise allegations rely on a supposed connection between several corporate entities which have no connection to RAB, including a wholly separate business that no longer operates.

36. All Plaintiffs have established is that RAB Defendants performed work on behalf of CA Repair, subject to a contract to engage in commercial collections, a lawful activity. This does not constitute a RICO enterprise. Plaintiffs have not established predicate acts, making only vague accusations regarding mail fraud or wire fraud or baseless unauthorized practice of law ("UPL") claims. Doc. 20 ¶ 194. Plaintiffs' alleged claims for UPL fail as a matter of law as there is no evidence the RAB Defendants ever actually filed or recorded any mechanic's lien nor took any other action that could be considered UPL, other than allegedly make statements that RAB Defendants could and/or would take such actions. *See generally* Doc. 20. Plaintiffs also rely on inapplicable statutes, such as the FDCPA or the Lanham Act, which are not defined predicate acts under 18 U.S.C. § 1961. Vague accusations regarding the other predicate acts, such mail fraud or wire claims that are devoid of any factual pleadings and fail to comply with Federal Rule 9(b) cannot serve as basis for predicate acts. *See Tubby's # 14, Ltd. v. Tubby's Sub Shops, Inc.*, No. 04-70918, 2005 U.S. Dist. LEXIS 38376, at *14 (E.D. Mich. Dec. 29, 2005) ("A plaintiff must plead mail and wire fraud with the specificity and particularity required by Federal Rule of Civil Procedure 9(b).").

37. Plaintiffs also claim RAB Defendants took these actions for "the sole purpose of the extorting Plaintiffs into paying an unlawful debt." Doc. 20 at 38. "Unlawful debt" under the RICO statute is a specifically defined as "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). There are no "unlawful debts" as defined by the RICO Act at issue in this lawsuit and thus any allegations regarding "unlawful debts" must be dismissed.

38. Further, Plaintiffs do not allege and cannot establish either closed- or open-ended continuity, as is required for a RICO claim. A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006). Conduct that is alleged to have occurred over the course of a few weeks, as with the conduct alleged herein, do not establish continuity. *Id.* (citing H. J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242, 109 S. Ct. 2893, 2902 (1989). Further, Plaintiffs vague accusations that RAB Defendants have done this before, continues to do this, or does this to other parties are conclusory statements that cannot be given any weight nor serve to establish the continuity element of a RICO claim. Doc. 20 ¶ 193.

39. Given that Plaintiffs do not plead all the required elements of a RICO claim, as shown herein by the lack of any pleading concerning an enterprise or continuity, among other issues, and the complete lack of any substantive RICO claim at all beyond this Conspiracy claim, and because

Plaintiffs cannot establish the elements of RICO claim, Plaintiffs' Conspiracy to Violate the RICO Act Claim fails as a matter of law.

**F. There is no valid claim for defamation.**

40. Defamation is a false publication that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or affects the person adversely in his or her trade or business. *Matalka v. Lagemann*, 21 Ohio App. 3d 134, 138, 21 Ohio B. 143, 486 N.E.2d 1220 (10th Dist.1985). To prevail on his defamation claim, Plaintiffs must prove that: (1) a false statement, (2) about them, (3) was published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to him. *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. No. 10AP-565, 2011-Ohio-777, P8; *Kanjuka v. MetroHealth Med. Ctr.,* 151 Ohio App.3d 183, 783 N.E.2d 920, ¶ 15 (8th Dist.2002) (citing *Celebrezze v. Dayton Newspapers, Inc*., 41 Ohio App. 3d 343, 535 N.E.2d 755 (8th Dist.1988)). In Ohio, truth is a complete defense to a claim for defamation. *Ed Schory & Sons v. Francis*, 75 Ohio St. 3d 433, 445, 662 N.E.2d 1074 (1996). Similarly, the expression of an opinion is generally immune from liability under the Ohio and United States Constitutions. *Mehta v. Ohio Univ.*, 194 Ohio App.3d 844, 2011-Ohio-3484, 958 N.E.2d 598, ¶ 38 (10th Dist.) (citing *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 1995- Ohio 187, 649 N.E.2d 182 (1995)).

41. Plaintiffs' first alleged defamatory statement concerns RFT owing a commercial debt to CA Repair. Doc. 20 ¶ 218. Plaintiffs allege the statement is defamatory because the debt is "unlawful." *Id*. First, it is not clear if Plaintiffs are using "unlawful debt" in the same context as their RICO claim, in which none of the debts at issue in this case qualify as a "unlawful debt." *Id*. Further, there is nothing "unlawful" about a disputed commercial debt arising from a contract,

especially when the alleged breach is being litigated in this same matter. Further, Plaintiffs fully admit they never paid the debts. While they dispute owing the debts, there is no dispute that they never paid the debt(s) at issue. This cannot form the basis of a defamation claim, as it is true statement conning RFT's nonpayment of the debts. Similarly, Plaintiffs' claims that RAB Defendants' statements breached a contract between RFT and CA Repair are not a valid basis for a defamation claim.

42. The second one concerns Plaintiffs claim that the RAB Defendants stated RFT and its customers were subject to legal action. Doc. 20 ¶ 218. Statements made to individuals other than Plaintiffs, that state those other individuals may be subject to legal action, are not false statements about RFT and therefore cannot serve as a basis for a defamation claim. Further, statements concerning potential future actions against non-parties do not qualify as defamatory statements against Plaintiffs.

43. Plaintiffs' third allegedly defamatory statement is regarding RAB Defendants alleged threats to put liens on the homes of other individuals who are not a part of this lawsuit cannot serve as the basis of a defamation claim against RAB Defendants. Doc. 20 ¶ 218. First, they detail alleged future activity that may occur in the future; they are not statements of fact concerning past actions or statements. Even if these statements were false, they were not made about RFT; they would be false statements about RAB Defendants' ability to place liens, as Plaintiffs allege in their fraud claim. In total, Plaintiffs have not shown that RAB Defendants made any false statements concerning RFT that could form the basis of a defamation claim.

44. Plaintiffs' fourth allegedly defamatory statement alleges RAB Defendants made "knowingly false statements that described or alluded to various bad business practices of RFT." Doc. 20 ¶ 218. Plaintiffs do not identify what false statements were made concerning "various bad

business practices of RFT" other than RFT not paying the amounts owed to CA Repair, which is not in dispute. *Id*.

45. Plaintiffs' fifth allegedly defamatory statement is based on "Defendants' knowingly false statement that described or inferred Plaintiffs were providing consent, authorization, or agreement for Defendants." Doc. 20 ¶ 218. RAB Defendants never made any such statements; this is entirely premised on Plaintiffs' being copied on an email. There are no words, written or spoken, to support this claim of defamation. *Id.* This cannot constitute defamation as there is no defamatory statement here, and Plaintiffs' interpretation of a "cc" line on an email is not actionable defamation. Plaintiffs cannot point to any actual statement made by RAB Defendants that implied or inferred such consent or authorization.

46. Plaintiffs' sixth allegedly defamatory statement is based on RAB Defendant's allegedly making "knowingly false statements about the application of Ohio and Kentucky law as well as insinuating or commencing white collar criminal investigations into RFT's business practices." Doc. 20 ¶ 218. A false statement about the application of law is not a false statement about RFT and cannot serve as the basis for a defamation claim. Likewise, claims that RAB Defendants "insinuated" there would be a white collar criminal investigation is likewise not a false statement about RFT, but a statement about potential future action. None of these statements qualify as a defamatory and false statement made about RFT or Haskamp.

47. Further, Plaintiffs have not shown that any false statements concerning RFT were published to third parties. Doc. 20 at 44-46. The only "false statements" published to third parties identified by Plaintiffs, which were allegedly published to RFT's customers, concern those individuals being subject to potential liens or legal actions. These are not false statements about RFT and therefore cannot constitute the publication of false statements about RFT to third parties, especially

considering the only statement concerning RFT made by RAB Defendants, that RFT did not pay the debts, is true. Statements about potential future action taken by someone other than RFT against parties other than RFT are not false statements about RFT and cannot form the basis of a defamation claims.

48. Finally, Plaintiffs fail to make any allegations regarding actual harm from these statements, alleging only vague losses to his reputation and non-specific loss of contracts or future business, which is insufficient in this matter. For these reasons, Plaintiff's defamation claim should be dismissed.

**G. Plaintiffs have not identified any contracts that were tortiously interfered with.**

49. Plaintiffs attempt to allege a claim for tortious interference with Plaintiffs' business relationships and contracts. Doc. 20 at 47. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 1995 Ohio 66, 651 N.E.2d 1283 (1995). "The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Wolf v. McCullough-Hyde Mem. Hosp.*, 67 Ohio App.3d 349, 355, 586 N.E.2d 1204 (12th Dist.1990); *Ginn v. Stonecreek Dental Care*, 2015-Ohio-1600, ¶ 11, 30 N.E.3d 1034, 1039 (Ct. App.)

50. "A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." *BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021.; *see Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010)

(dismissing tortious interference with business relationships claim for failure to specify what relationships defendant allegedly interfered with, stating "vague assertion of interference, however, is just a 'legal conclusion' that is itself entitled to no weight"). "Put simply: A plaintiff must identify the business relationship(s) with which the defendant allegedly interfered. If he does not, then the Court dismisses the claim." *Babcock & Wilcox Solar Holdings, LLC v. Jackson*, No. 5:24-cv-00910-CEF, 2025 U.S. Dist. LEXIS 209823, at *19-20 (N.D. Ohio Oct. 24, 2025) (internal citations omitted).

51. Plaintiffs' Complaint is devoid of any allegations that RAB Defendants' actions caused a breach or termination of any relationship. Doc. 20 at 47. Plaintiffs claim, "RFT customers have questioned and/or sworn off Plaintiffs' business" but provides no allegations regarding any customers that have "sworn off Plaintiffs' business" and no actual allegations that Plaintiffs lost any business or customers over the alleged conduct by RAB Defendants. *Id*. The only individuals alleged to have changed or modified their relationship with RFT allegedly did so as a result of actions by CA Repair. Doc. 20 at 11-12. Further, as these were individuals for whom the work had already been performed, and given the nature of roof repairs, it is unlikely that these individuals are subject to any ongoing contractual relationship with any of the Plaintiffs. Plaintiffs' vague accusations regarding such are legal conclusions that are not entitled to any weight at this stage. Given Plaintiffs' failure to allege a proper element of a claim of tortious interference, this claim must be dismissed.

52. Further, as these are contracts entered into by RFT, as a company performing services for other, non-related individuals, Haskamp has no individual claim for tortious interference. There are no allegations that Haskamp was personally subject to any contract with any other individuals

or signed any contracts in his personal capacity. Thus, Plaintiff Haskamp's claim for tortious interference fails as a matter of law and must be dismissed.

**H. There is no valid fraud claim alleged.**

53. Plaintiffs attempt to allege fraud and fraudulent inducement but fail to allege a proper claim under either claim. Doc. 20 at 48-50. The elements of fraud and fraud in the inducement are essentially the same. *ATC Healthcare Servs., LLC v. Frontline Healthcare Staffing, LLC*, No. 1:23-CV-00392, 2026 U.S. Dist. LEXIS 11492, at *7-8 (N.D. Ohio Jan. 22, 2026). The elements of fraud and/or fraud in the inducement are: (1) a representation of fact (or where there is a duty to disclose, concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 10 Ohio B. 500, 462 N.E.2d 407 (1984). Fraud claims must be pled with specificity under Federal Rule 9(b).

54. The only representation of fact addressed in Plaintiffs' fraud section is that RAB Defendants "desired Plaintiffs to believe and caused Plaintiffs to justifiably rely on the false belief that RAB Defendants were licensed attorneys and capable of bringing the threatened legal actions against Plaintiffs and their customers, in order extort and leverage the payment of an unlawful debt to Defendant CA Repair." Doc. 20 ¶ 214. This does not identify the alleged false statement(s) at issue and fails to plead the claim with specificity. Further, it relies on RFT's alleged impression from several different communications and is not based on a false statement of fact made by RAB Defendants. Notably, Plaintiffs cannot point to any statement made by RAB Defendants in which they stated they were attorneys; this claim is solely based on RFT's interpretation of a letter of

representation between RAB and CA Repair. Never once did any RAB Defendants state they were licensed attorneys.

55. Further, Plaintiffs cannot establish justifiable reliance under the facts alleged in Plaintiffs' Amended Complaint. First, Plaintiffs claim they justifiably relied on the RAB Defendants' alleged statement that they were "licensed attorneys" but no such statements appear anywhere. Doc. 20 ¶ 214. Plaintiffs claim a March 4 email falsely held RAB Defendants out as attorneys. Doc. 20 ¶¶ 56; 59. The March 4 email at issue does not make any statements that Barker is a licensed attorney or that RAB Defendants is a law firm. Calling RAB a "firm" and attaching a "letter of representation" does not mean RAB Defendants held itself out as a law firm or that Barker held himself out as an attorney. Further, the letter only states they could "pursue any and all legal remedies" but makes no statements that they would be filing these suits themselves, as opposed to hiring counsel in the relevant states to do so, on behalf of CA Repair. Doc. 20 ¶ 59. Plaintiffs cannot have justifiable relied on a claim that RAB Defendants did not make and cannot have justifiable relied upon non-existent statements that Plaintiffs read into communications.

56. Any claim for justifiable reliance is also undercut by the actions of Haskamp. Haskamp, who states he was suffering through a family crisis, agreed to the payment plans without consulting his inhouse counsel. Doc. 20 at 23, 26.[3] If Haskamp genuinely believed and feared legal action, there is no valid reason not to include the general counsel for the company in these discussions sooner. RFT, as a company, cannot claim it was justified in any reliance on these statements when it failed to run these statements by its legal counsel, who exists to handle disputes such as this. Failing to obtain legal counsel when such legal counsel is readily available and is in fact employed

[3] According to the Complaint, it took Haskamp approximately ten (10) days to inform RFT's inhouse counsel of what Plaintiffs believes was a potential lawsuit or legal actions against RFT, during which time Haskamp, a non-attorney, took efforts to resolve what he believed was a potential legal action himself, without legal counsel. This undercuts any argument of justifiable reliance.

by Plaintiffs removes any basis to find justifiable reliance. Thus, there is no justifiable reliance, and Plaintiffs' fraud claim fails.

57. Finally, there is no evidence of any damage caused by the alleged fraud. Doc. 20 at 50. While Plaintiffs claim they made a $4,000 payment, Plaintiffs also acknowledge that they canceled the payment and never actually paid any money to RAB Defendants. Doc. 20 ¶ 225. Thus, there are no damages, as Plaintiffs have not suffered any economic loss, and the Complaint's vague statements concerning reputational damages are insufficient to show a proximate cause between the alleged fraudulent statements and Plaintiffs' alleged harm. For these reasons, the fraud claim should be dismissed.

### I. Haskamp does not plead a valid claim for intentional infliction of emotional distress.

58. "The Sixth Circuit has noted that establishing a prima facie case for intentional infliction of emotional distress is difficult under Ohio law." *Norman v. City of Lorain,* No. 1:04 CV 913, 2006 U.S. Dist. LEXIS 83400, at *5 (N.D. Ohio Nov. 16, 2006); *see Baab v. AMR Servs. Corp.,* 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define [']extreme and outrageous conduct' would be something of an understatement."); *see, e.g.*, *Mullholand v. Harris Corp,* 1995 U.S. App. LEXIS 37000 at *3 (6th Cir. 1995) (upholding dismissal of IIED claim despite allegations that "a co-worker had allegedly sexually harassed the plaintiff, spread rumors about her, and 'pushed' the plaintiff 'against her locker and slammed its doors against her.'").

59. To establish a claim for intentional infliction of emotional distress ("IIED), a plaintiff must prove (1) the defendant intended to cause the plaintiff serious emotional distress, (2) the defendant's conduct was "'extreme and outrageous,'" and (3) the conduct proximately caused the plaintiff's serious emotional distress. *Meminger v. Ohio State Univ*., 2017-Ohio-9290, ¶ 14, 102 N.E.3d 642 (10th Dist.) (quoting *Phung v. Waste Mgt*., 71 Ohio St.3d 408, 410, 1994- Ohio 389,

644 N.E.2d 286 (1994)). Serious emotional distress requires "the emotional injury [to] be so debilitating and severe that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Williams v. NAACP*, 2019-Ohio-1897, ¶ 28, 135 N.E.3d 1260 (10th Dist.) (quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 6 Ohio B. 114, 451 N.E.2d 759 (1983)). Examples of serious emotional distress include "traumatically induced neurosis, psychosis, chronic depression, and phobia." *Ford Motor Credit Co. v. Ryan*, 189 Ohio App. 3d 560, 2010-Ohio-4601, ¶ 56, 939 N.E.2d 891). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not support a claim for intentional infliction of emotional distress. *Doe v. Archdiocese of Cincinnati*, 2024 U.S. Dist. LEXIS 99947, 2024 WL 2845935, at *3 (S.D. Ohio June 5, 2024).

60. Whether an alleged injury is sufficiently serious and whether defendant's alleged conduct was sufficiently extreme and outrageous for the claim to go forward is an issue decided by the court. *See Popson v. Danbury Local School Dist.,* 2005 U.S. Dist. LEXIS 46429, 2005 WL 1126732, *12 (N.D. Ohio, April 28, 2005); *Kovac v. Lowe's Home Centers, Inc.,* 2007 U.S. Dist. LEXIS 37214, 2006 WL 1644336, *9 (N.D. Ohio, June 7, 2006).

61. Plaintiff Haskamp fails to state a valid claim for IIED for several reasons. First, Plaintiff Haskamp admits he was in an "already-fragile emotional state due to a personal, family crisis involving his child." Doc. 20 ¶ 218. This was not caused by RAB Defendants or any other defendant, and cuts against any claim RAB Defendants damaged Plaintiff Haskamp. Further, Plaintiff Haskamp states, in his Complaint, that he told RAB Defendants, "he was not himself specifically due to his child being hospitalized." *Id.* ¶ 220. Thus, the complaint shows that any mental anguish Plaintiff Haskamp allegedly suffered was resulting from the medical emergency with his client, not with RAB Defendants.

62. The complaint further shows that Plaintiff Haskamp volunteered this information to RAB Defendants; RAB Defendants did not know of this before Plaintiff Haskamp provided it to RAB Defendants, which undercuts the claim RAB Defendants took advantage of this fact. While Plaintiff Haskamp alleges "opportunistically and predatorily relied on this information in order to induce Plaintiff Haskamp to discuss a payment install plan to satisfy the unlawful debt," he does not make any allegations as to how RAB Defendants alleged "predatorily relied on this information." Doc. 20 ¶ 255. None of the allegations made by Plaintiffs concerning RAB Defendants set forth any factual statements as to how RAB Defendants relied on this information or used it against Plaintiff Haskamp, and there are no allegations RAB Defendants even mentioned the medical emergency at any point with any individual or company. Doc. 20. Plaintiff Haskamp suffering from a medical emergency or family crisis does not transform RAB Defendants' actions into IIED, and Plaintiff Haskamp does not point to anything that would require RAB to cease its business activities because Plaintiff Haskamp has a personal issue.

63. Further, Plaintiff Haskamp does not allege any facts supporting there was any serious emotional distress caused by RAB Defendants, and no allegations of any "traumatically induced neurosis, psychosis, chronic depression, and phobia" or similar harms. The only harm actually alleged in Plaintiff Haskamp's IIED claim is that he was alleged required to "call off work and instead hike nature trails for several days to clear his head from negative thoughts." Doc. 20 ¶ 257. This is a far cry from neurosis, psychosis, chronic depressions or phobias, especially when the harm Plaintiff Haskamp alleged suffered was being forced to hike nature trails. Further, as Plaintiff Haskamp was alleged already "not himself" and in a "fragile emotional state" due to his family crisis, which has no connect to the RAB Defendants, any emotional distress Plaintiff Haskamp suffered cannot be shown to have resulted from RAB Defendants' actions. Thus, Plaintiff Haskamp

cannot establish that RAB Defendants were the proximate cause of his mental anguish as he was going through a family crisis and hospitalization of a loved one, which he admits had caused him mental anguish before RAB Defendants spoke to him.

64. Plaintiff Haskamp's claim is entirely based on RAB Defendants allegedly "predatorily relying" on Plaintiff Haskamp's family emergency, but there are no allegations to support this. Further, the IIED claim relies on RAB Defendants' actions somehow putting Plaintiff Haskamp in a worse mental state than the hospitalization of his child and family crisis he was going through at the same time. Nothing in the Complaint supports a claim for IIED. As Plaintiffs' IIED claim fails to state a valid claim, it should be dismissed with prejudice.

**J. Declaratory and Injunctive Relief is not warranted in this case**

65. Plaintiffs seek declaratory relief that the Defendants violated the provisions of the various statutes and engaged in the various torts alleged herein. Doc. 20 at 53. Essentially, Plaintiffs seek declaratory judgment that their claims are valid and liability was established. To this end, they are essentially duplicative of the previous claims. Any declaratory judgment regarding the terms of the contract will be decided in the breach of contract claims; whether the Defendants violated any other statutes or engaged in any tortious acts will likewise be decided by those claims succeeding or failing on the merits.

66. Courts routinely dismiss declaratory judgment claims when the facts underlying the request for declaratory relief have already ripened into a cause of action. *See Putman v. Allstate Ins. Co*., No. 1:21-cv-14, 2021 U.S. Dist. LEXIS 77768, 2021 WL 1580836, at *3 (S.D. Ohio Apr. 22, 2021) ("Since the adjudication of Putman's breach of contract claim will necessarily decide 'the status of the contractual relationship,' declaratory judgment on the same issue is unnecessary and duplicative."); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 908 (6th Cir. 1999). This

is the case here, as Plaintiffs have brought suit for past action and alleged eleven different claims resulting from the Conduct. For these reasons, this Court should dismiss the Declaratory Judgment claim.

67. Likewise, the request for injunctive relief should be dismissed. Plaintiffs claim that "Plaintiffs will suffer immediate and irreparable injury unless the Court acts to restrain and enjoin Defendants." Doc. 20 ¶ 263. There are no factual allegations to support this. Plaintiffs' Complaint entirely concerns actions taken in the past, and there are no factual allegations regarding RAB Defendants taking any ongoing action against Plaintiffs. Thus, there is nothing to support that Plaintiffs will suffer irreparable harm if Defendants are not enjoined. Further, Plaintiffs cannot show they would not adequately be compensated by money damages, as all of the claims concern past actions for which they seek monetary compensation. Finally, the injunctive relief sought applies to parties outside this litigation, the conduct sought to be enjoined is not adequately defined and seeks to enjoin actions that were not taken by RAB Defendants.

## CONCLUSION

68. Plaintiffs' Amended Complaint fails to state claims upon which relief can be granted. Plaintiffs plead claims under inapplicable statutes, such as the FDCPA, and fail to plead the requirements of their other claims. Further, Plaintiffs' claims are largely based on statements that RAB Defendants did not make or inaccurate inferences or conclusions drawn by Plaintiffs. For these reasons, as stated fully herein, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: July 27, 2026

Respectfully Submitted,

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)
LAW OFFICE OF BOYD W. GENTRY, LLC
4031 Colonel Glenn Highway, First Floor
Dayton, OH 45431
Tel. 937.839.2881

bgentry@boydgentrylaw.com
*Trial Attorney for Defendants RAB, Inc., Renee Barker, and Ty Robinson*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served via the Court's ECF filing system and on July 27, 2026, to all counsel of record and to the following via U.S. Mail:

CA REPAIR AND ROOFING, LLC
12078 Hitchcock Drive
Cincinnati, OH 45240

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)